UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MURPHY,<br><br>        Petitioner,<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | No. 13-cv-8115 (RJS)<br>OPINION AND ORDER |
| UNITED STATES OF AMERICA<br><br>-v-<br><br>DAVID MURPHY,<br><br>        Defendant. | No. 10-cr-107 (RJS)<br>OPINION AND ORDER |

RICHARD J. SULLIVAN, District Judge:

  David Murphy ("Petitioner"), proceeding *pro se*, brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255, challenging his conviction and sentencing on the ground that he received ineffective assistance of counsel at trial. (No. 13-cv-8115, Doc. No. 1 (the "Petition" or "Pet.").) Petitioner also moves for the Court's recusal and for leave to amend the Petition. For the reasons set forth below, the Petition and the motions for recusal and leave to amend are denied.

I. BACKGROUND

A. Facts

  Between 2006 and 2009, Petitioner was a salaried employee of the Archdiocese of New York, working as a consultant in the Archdiocesan Building Commission (the "Archdiocese" or

the "Commission"). (Trial Tr. at 94:7–24, 96:7–10.)[1] As part of his responsibilities, Petitioner oversaw construction projects occurring on various parish properties in the Bronx. (*Id.* at 36:14–38:1, 73:2–6, 91:17–92:10.) Murphy was paid an annual salary but was not entitled to any other compensation aside from a $100 Christmas bonus. (Trial Tr. 35:16–37:8, 39:18–40:21, 92:11–93:11, 94:19–95:19.) Although "[Petitioner] . . . knew that he could not receive additional compensation," Petitioner nonetheless "requested and obtained additional money" under false pretenses from officials at two Bronx Catholic schools, St. Anselm and St. Athanasius (the "Schools"). *Murphy*, 506 F. App'x at 3. Specifically, while Petitioner was helping oversee soundproofing construction projects at the Schools that were subsidized by the Federal Aviation Administration and Port Authority of New York and New Jersey, he asked school officials to pay for expenses that he falsely represented had been authorized by the Archdiocese and which Petitioner did not, in fact, incur. *Id.* at 3 (summarizing the government's evidence). As St. Anselm's principal Teresa Lopes and St. Athanasius's principal Marianne Kraft both testified, the Schools would not have paid these purported expenses if they had known that the Archdiocese had not authorized them. (Trial Tr. 245:23–246:1, 357:22–24.) Petitioner thereafter converted these funds for his own "personal use." *Murphy*, 506 F. App'x at 3.

In early 2009 – in connection with an unrelated arbitration proceeding – an Archdiocese attorney questioned Petitioner about missing checks, and Petitioner eventually admitted that he

---

[1] Unless otherwise indicated, citations to docketed items refer to those materials that appear in Petitioner's criminal case, *United States v. David Murphy*, 10-cr-107 (RJS) (S.D.N.Y.). However, the Court also cites materials that appear in Petitioner's civil case, *David Murphy v. United States*, 13-cv-8115 (RJS) (S.D.N.Y.), as well as the Second Circuit's summary order affirming Petitioner's conviction, *United States v. Murphy*, 506 F. App'x 2 (2d Cir. 2012). In ruling on the Petition, the Court has also considered the government's answer (Doc. No. 13-cv-8115, Doc. No. 8), Petitioner's supplemental letter, dated March 13, 2014 (No. 13-cv-8115, Doc. No. 9 ("March 2014 Letter")), Petitioner's letter in support of amendment of the Petition, dated July 25, 2014 (No. 13-cv-8115, Doc. No. 11 ("July 2014 Letter")), the government's letter in opposition to amendment, dated July 31, 2014 (No. 13-cv-8115, Doc. No. 10), and Petitioner's supplemental letter, dated October 29, 2015 (No. 13-cv-8115, Doc. No. 12 ("October 2015 Letter")). Although the Court construes Petitioner's *pro se* submissions liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam), the Court draws all factual inferences in favor of the government in light of the jury's guilty verdict, *see Quartararo v. Hanslmaier*, 186 F.3d 91, 96 (2d Cir. 1999).

had taken approximately $250,000 without authorization while overseeing the construction projects at the Schools. (*Id.* at 53:17–54:25, 574:8–583:12; *see also id.* at 389:18–406:16.) On March 12, 2009, Petitioner was fired, and the Archdiocese referred the matter to the Federal Bureau of Investigation. (*Id.* at 55:13–15, 61:5–6, 587:11–12.) Nonetheless, during a January 2010 meeting at the U.S. Attorney's Office for the Southern District of New York, Petitioner falsely represented he had been authorized to receive the payments from the Schools and produced falsified documents, which misleadingly indicated that the Commission's director had been copied on certain invoices Petitioner had provided to the schools. (*Id.* at 536:25–547:15.) In fact, the authentic documents revealed that the Director had not been copied on the invoices. (*Id.* at 545:5–547:15.)

## B. Procedural History

On February 9, 2010, the grand jury returned a one-count Indictment, charging Petitioner with theft from programs receiving federal funds, in violation of 18 U.S.C. § 666. (Doc. No. 10.) Trial began on July 19, 2010, and on July 27, 2010, the Court declared a mistrial on the ground that the jury was hung. On September 7, 2010, the government filed a second Superseding Indictment, this time charging Petitioner with two counts: theft from programs receiving federal funds, in violation of 18 U.S.C. § 666 (Count One), and making false statements to the government, in violation of 18 U.S.C. § 1001 (Count Two). (Doc. No. 36.) The second trial commenced on October 19, 2010, and on October 27, 2010, the jury returned a guilty verdict on both counts.

On March 1, 2011, the Court sentenced Petitioner to 51 months' imprisonment, to run concurrently on both counts of conviction, to be followed by a three-year term of supervised release, and ordered Petitioner to pay $248,700 in restitution. (Doc. No. 87.) Petitioner appealed, arguing that (1) the evidence was insufficient to support the jury's verdict; (2) the Court abused its discretion in denying Petitioner's motion for a new trial; and (3) certain cross-examination and

rebuttal evidence about Petitioner's educational background should have been barred. On December 20, 2012, the United States Court of Appeals for the Second Circuit issued a summary order affirming Petitioner's conviction in all respects. (Doc. No. 97.) Thereafter, Petitioner timely filed a petition for writ of certiorari, which the Supreme Court denied on April 22, 2013. *Murphy*, 506 F. App'x at 2, *cert. denied*, 133 S. Ct. 2011 (2013).

On November 13, 2013, Petitioner, while incarcerated, filed the instant § 2255 petition. (Pet.) Respondent timely filed its answer on February 28, 2014. (No. 13-cv-8115 (RJS), Doc. No. 8.) Petitioner did not file a reply to Respondent's answer. However, in a letter dated March 9, 2014, Petitioner sought the Court's recusal from this matter (March 2014 Letter at 1), and in a letter dated July 22, 2014, Petitioner sought leave to amend the Petition on the ground that the jury was not properly instructed (*see* July 2014 Letter at 1). The government filed a response to Petitioner's letter requesting leave to amend on July 31, 2014. (Doc. No. 10.) On October 29, 2015, Petitioner filed a supplemental letter to the Court, in which he rehashed arguments made before the Second Circuit and in the instant Petition – namely, that the evidence was insufficient to support his conviction, that the Court should have recused itself because of bias, and that his attorney provided ineffective assistance of counsel. (*See* October 2015 Letter at 1–5.)[2]

## II.  RECUSAL FROM DECIDING THE INSTANT SECTION 2255 PETITION

Petitioner seeks the Court's recusal from deciding the instant petition, underscoring that he was convicted of embezzling federal program funds from two Catholic elementary schools and that the undersigned was, during trial, "on the staff at Fordham Law School, a [C]atholic institution." (March 2014 Letter at 1.) Although Petitioner acknowledges that he "can not pick

---

[2] Petitioner was released from prison on November 10, 2014, but he remains on supervised release until November 2017.

4

[his] judge," he nevertheless seeks "[a]ny other [d]istrict court judge without Catholic Church affiliation." (*Id*. at 2.)

A judge must recuse "himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Specifically, the Court must consider "whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." *S.E.C. v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013), *as amended* (Nov. 26, 2013). "Where an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality." *In re Drexel Burnham Lambert*, 861 F.2d 1307, 1313 (2d Cir. 1988). Accordingly, the standard set forth under Section 455(a) is met in "rare cases." *Toliver v. N.Y. City Dep't of Corr.*, No. 10-cv-5355 (RJS), 2016 WL 4705166, at *6 (S.D.N.Y. July 29, 2016) (quoting *Ghee v. Artuz*, 285 F. Supp. 2d 328, 329 (E.D.N.Y. 2003)). Section 455(b)(1) also requires recusal where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts." 28 U.S.C. § 455(b)(1); *accord* 28 U.S.C. § 144. But the Second Circuit has instructed that when "the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001). In other words, "'[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.'" *Id.* (quoting *In re Drexel Burnham Lambert*, 861 F.2d at 1312).

Petitioner is correct that the undersigned served as an Adjunct Professor at Fordham University School of Law during Petitioner's trial and that Fordham is a Catholic institution. But other than Petitioner's conclusory and speculative arguments regarding the Court's connection to a law school that is affiliated with a Jesuit university – not the Archdiocese of New York – Petitioner has not identified any link between the law school and the parish schools involved in this case. To whatever extent Petitioner's motion can be construed as a challenge to the Court's

5

impartiality, it rests on the implicit assumption that Petitioner was denied a fair trial because the undersigned is a practicing Catholic. Such an argument is clearly untenable. *See Ransmeier v. Mariani*, 718 F.3d 64, 70 (2d Cir. 2013) (rejecting as "ludicrous," "patently frivolous," "spurious," and "offensive" the argument that district judge should recuse himself because of his religious affiliation); *Blasi v. N.Y. City Bd. of Educ.*, 544 F. App'x 10, 12 (2d Cir. 2013) (holding similarly); *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Appellants' claim that any district or circuit judge who is Roman Catholic must recuse himself from the case is totally without merit."); *United States v. El-Gabrowny*, 844 F. Supp. 955, 962 (S.D.N.Y. 1994) (rejecting motion for disqualification premised on judge's religious affiliation); *cf. MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 37 (2d Cir. 1998) ("A suggestion that a judge cannot administer the law fairly because of the judge's racial and ethnic heritage is extremely serious and should not be made without a factual foundation going well beyond the judge's membership in a particular racial or ethnic group."). Here, Petitioner has failed to articulate any bias or prejudice on the part of the undersigned with respect to this case – indeed, there is none – and merely makes conclusory assertions designed to disparage the Court and the judicial process. Accordingly, Petitioner's motion for recusal is denied.

### III. SECTION 2255 PETITION

Having rejected Petitioner's recusal motion, the Court next turns to the merits of the Petition, in which Petitioner asserts that his trial counsel was ineffective. Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which

inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a Section 2255 petition.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. *See* U.S. Const. amend. VI. When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong. *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

As for *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The court starts from the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91). Because there are many different ways to provide effective

assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

With respect to *Strickland*'s second prong, a "reasonable probability" that the outcome would have been different but for counsel's deficient performance is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. An "'error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691). In other words, to find prejudice, a court must conclude that "'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686).

Petitioner contends that his trial counsel was ineffective on the grounds that she failed to: (1) call a particular witness, Father Palacios, to testify, (2) "do basic research and preparation" for trial, resulting in her failure to introduce certain evidence regarding the Schools' corporate structure, and (3) move for the Court's recusal. (Pet. 14–15.) At the outset, the Court notes that Petitioner's grievances are belied by defense counsel's highly capable and professional representation throughout the trial, which the Court recognized on the record following the jury's deliberations. (Trial Tr. at 1044:22–1045:5.) In fact, notwithstanding the overwhelming evidence of guilt against Petitioner, Petitioner's defense counsel initially secured a hung jury in the first trial. Nonetheless, the Court will address each of Petitioner's contentions in turn.

A. Failure to Call Witness

Father Palacios was the pastor of St. Anselm and signed the checks issued to Petitioner and Petitioner's company from funds provided to the parish by the Port Authority. (Trial Tr. 344:12–13, 357:5–6.) Without elaboration, Petitioner conclusorily states that Father Palacios "would have testified favorably for the defense" and that he "possessed information which would have exonerated" Petitioner. (Pet. 14.) Even so, counsel's specific decision not to call a witness is accorded substantial deference, *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998), and Petitioner has failed to demonstrate that his counsel's conduct should not be given such deference. In fact, defense counsel *did* elicit comparable testimony concerning Father Palacios from other witnesses. St. Anselm's principal Lopes, for example, testified that Father Palacios did not object to signing the checks issued to Petitioner and Petitioner's company (Trial Tr. at 372:1–13), and Petitioner himself testified that Father Palacios signed the checks freely and voluntarily and did not question Petitioner's authority to receive the checks from the Schools (*id.* at 661:16–662:3). Indeed, Father Palacios played a prominent role in the defense's narrative, and defense counsel even indicated on the record that she contemplated calling Father Palacios as a defense witness. (*Id.* at 434:19–20.) Given Lopes's and Petitioner's testimony regarding Father Palacios, the Court will not second guess defense counsel's strategic decision not to call Father Palacios.

Moreover, even assuming *arguendo* that defense counsel's performance was somehow deficient, Petitioner cannot demonstrate prejudice. Petitioner does not address the nature of the testimony Father Palacios would have provided, nor does he explain how it would have exonerated him. It therefore follows, *a fortiori*, that Petitioner has failed to show any "reasonable probability that but for counsel's error, the outcome of the proceeding in which the constitutionally deficient representation occurred would have been different." *Luciano*, 158 F.3d at 660.

Furthermore, even if Father Palacios had testified that he believed that Petitioner's efforts on the soundproofing project justified the payments in question at the time he signed the checks, this testimony would have been cumulative of Lopes's and Petitioner's testimony, and, in any event, simply beside the point. In light of the government's evidence, including the principals' testimony that the Schools would not have paid the relevant expenses but for Petitioner's misrepresentations regarding his authority from the Archdiocese (Trial Tr. 245:23–246:1, 357:22–24), the jury justifiably concluded that Petitioner "embezzled, stole, obtained by fraud, [or] otherwise without authority knowingly converted" property belonging to the Schools for his own use (Doc. No. 36) (Trial Tr. 1001:6–1009:18 (jury instruction)); *see also* 18 U.S.C. § 666(a)(1)(A). The Second Circuit affirmed this conclusion on appeal. *Murphy*, 506 F. App'x at 2. Significantly, Petitioner does *not* suggest that Father Palacios would have testified that he was aware of the Archdiocese's prohibition against consultants receiving extra compensation but chose to pay Petitioner anyway, or that he would have paid Petitioner's expenses even if he had known that they were prohibited by Archdiocesan rules. Absent such an assertion – which was directly contradicted by Lopes and Kraft – Petitioner cannot come close to demonstrating that he was prejudiced by counsel's decision not to call Father Palacios.

B. The Schools' Corporate Status

Petitioner also claims ineffective assistance of counsel arising from his attorney's alleged failure to discover that the Schools are separate entities from the Archdiocese. (Pet. 14.) Petitioner argues that this fact undercuts the government's theory of the case, since the government "advanced the theory that [Petitioner] had committed theft of federal funds because [he] had not received authorization from the . . . Archdiocese . . . ." (*Id.*) Construing Petitioner's argument liberally, he appears to assert that because the principals had authority independent of the

Archdiocese and could allocate the relevant funds as they chose, Petitioner was entitled to the reimbursements.

This claim is also meritless. As an initial matter, evidence that the parishes are separate entities from the Archdiocese *was* introduced at trial. Specifically, there was trial evidence that the parishes had separate checking accounts (Gov't Ex. 106, Gov't Ex. 206) and outside counsel (Trial Tr. 76:9–12, 592:23–592:5) and that the parishes – and not the Archdiocese – contracted with the Port Authority (*id.* at 148:8–10, 149:2–13). Moreover, to the extent that Petitioner's proposed separate legal entity argument could be construed as an alternate defense, defense counsel's decision to pursue a different defense – principally, that Petitioner was the "general contractor" and was entitled to the payments – was a constitutionally permissible strategic choice that is accorded a high degree of deference. *See Luciano*, 158 F.3d at 660.

In any event, Petitioner cannot demonstrate that he was prejudiced by defense counsel's strategy, since the Schools' independence from the Archdiocese is immaterial to the ultimate question of Petitioner's guilt. As the Second Circuit explained in rejecting Petitioner's direct appeal, "[e]ven accepting [Petitioner's] claim that the principals" had authority, independent from the Archdiocese, to allocate the money as they chose, "the evidence amply supported the conclusion that [Petitioner] deceived the principals when, while apparently acting in his capacity as an agent of the Archdiocese, he made requests for funds that the Archdiocese had not authorized." *Murphy*, 506 F. App'x at 3. In other words, as explained in the previous section, the gravamen of Petitioner's crime under Count One is that he induced the Schools to pay him through misrepresentations regarding his authority. The principals both testified that they would not have paid Petitioner $250,000 but for his representation that such payments had been authorized by Petitioner's employer, the Archdiocese. As a result, the fact that the Schools were separate legal entities is wholly irrelevant to any legal defense. Accordingly, the Court finds that Petitioner

11

cannot demonstrate prejudice on the part of trial counsel based on any alleged failure to address the legal independence of the Schools from the Archdiocese at trial.

### C. Failure to Seek Recusal

Petitioner also asserts that his counsel was ineffective because she failed to make a recusal motion at trial based on the fact that the undersigned was an Adjunct Professor at Fordham University School of Law. It bears noting that defense counsel *did* unsuccessfully move for the Court's recusal before Petitioner's first trial, albeit on a different ground – the fact that the undersigned's spouse had worked for the Archdiocese, a non-party to this action, *over a decade* before the start of trial. (July 19, 2010 Tr. at 2:15–7:10.) Petitioner's latest recusal argument is just a variation on his first motion and fares no better. As set forth in Section II of this Opinion and Order, there is no basis for concluding that the Court's impartiality might reasonably be questioned in this matter, and Petitioner fails to point to any evidence of bias or prejudice on the part of the undersigned. Obviously, defense counsel's "failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsch*, 54 F.3d 1062, 1071 (2d Cir. 1995). Moreover, Petitioner cannot show prejudice, since the Court would have denied a motion to recuse at trial, as it does here. Accordingly, Petitioner's claim for ineffective assistance on this basis lacks merit.

### IV. AMENDMENT OF PETITION

Having rejected all of Petitioner's arguments for ineffective assistance, the Court next turns to Petitioner's motion for leave to amend his Petition. (*See* July 2014 Letter at 1.) Petitioner does so in a three-page submission consisting of a two-sentence cover letter attaching a two-page article from the *National Law Journal* entitled "DOJ's Quiet Concession: U.S. gives up a widely decried charging theory." (*See id.*) The cover letter states that Petitioner wishes to amend because "the Supreme Court said that a defendant makes a false statement but was not acting willfully to deceive

the court," and that "[i]t is very clear that [Petitioner] did not commit a crime on either charge . . . ." (*Id.*)  The article included in Petitioner's submission indicates that the U.S. Department of Justice has clarified its position "that to make the case a defendant acted 'willfully,' the government must prove that he or she knew the statement was unlawful – not just that it was false." (*Id.* at 2.)  Liberally construing Petitioner's submission, the Court assumes that Petitioner is seeking to amend his habeas petition to add a claim that the jury was not properly instructed on the requirement that acts in violation of Section 666 and Section 1001 be committed "willfully."

Petitioner's motion for leave to amend is denied for two independent reasons.  First, Petitioner's proposed amendment is procedurally barred.  As the Second Circuit has explained, "a motion under § 2255 is not a substitute for direct appeal," and therefore a claim that was not raised on appeal is "procedurally forfeited" unless Petitioner "can show (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Sappia v. United States*, 433 F.3d 212, 217–18 (2d Cir. 2005).  Here, Petitioner did not raise his challenge to the jury instructions on direct appeal and does not even attempt to explain his failure to do so.  In light of the Second Circuit's affirmance of Petitioner's conviction and the fact that Petitioner has failed to point to any newly discovered exculpatory evidence, the Court also concludes that Petitioner has failed to meet the very high bar of proving "actual innocence." *See United States v. Thorn*, 659 F.3d 227, 234 (2d Cir. 2011) (instructing that a claim of "actual innocence" requires a petitioner to demonstrate "factual innocence, not mere legal insufficiency" and that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him" (internal quotation marks omitted)). Accordingly, Petitioner's request to amend his habeas petition is denied on the ground that it is procedurally barred.

Second, even if not procedurally barred, Petitioner's proposed amendment would fail on the merits and is therefore futile.  Leave to amend a habeas petition is governed by Rule 15 of the

13

Federal Rules of Civil Procedure. *See Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) (per curiam). Rule 15 provides that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Thus, "[l]eave to amend, though liberally granted, may properly be denied for . . . futility of amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted). "The proposed new pleading" is futile if it "fails to state a claim on which relief can be granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

In order to establish a "willful violation" of a federal criminal statute, the government generally "must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191–92 (1998) (internal quotation marks omitted). Here, the Court's instruction to the jury comported with this definition. Indeed, the Court instructed the jury with respect to both counts that "[w]illfully means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids." (Trial Tr. at 1008:11–13, 1013:2–4.) In short, the Court's instructions to the jury on willfulness were wholly correct as a matter of law and, for what it's worth, consistent with the very DOJ policy referenced in Petitioner's letter. Because Petitioner's challenge to the jury instruction has no merit, the Court concludes that Petitioner's proposed amendment would be futile.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Petitioner's request for the issuance of a writ of habeas corpus pursuant to Section 2255 is DENIED. IT IS FURTHER ORDERED THAT Petitioner's motions for recusal and to amend the Section 2255 petition are also DENIED. The Clerk of the Court is respectfully directed to mail a copy of this Opinion and

Order to Petitioner, to terminate the motion pending at docket number 98 in No. 10-cr-107, and to close the civil case, No. 13-cv-8115.

In addition, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and therefore, Petitioner may not proceed *in forma pauperis*.

SO ORDERED.

Dated:     November 4, 2016
           New York, New York

                                                    _____
                                                    RICHARD J. SULLIVAN
                                                    UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/4/16